**FRATELLI LOZZA (USA) INC., Plaintiff,**

v.

**LOZZA (USA) and Lozza SpA, Defendants.**

**No. 90 Civ. 4170 (FIP).**

United States District Court, S.D. New York.

April 6, 1992.

Charles E. Temko, Temko & Temko, New York City, for plaintiff.

Allison C. Collard, Collard Roe & Galgano, P.C., Roslyn, N.Y., Sonia Sotomayer, Pavia & Harcourt, New York City, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

PARKER, Chief Judge.*

### BACKGROUND

Plaintiff, Fratelli Lozza (USA) Inc., is a New York corporation with a principal place of business at Mount Vernon, New York, which is in the business of importing and distributing optical spectacle frames, principally of Italian manufacture. Defendant Lozza SpA is an Italian corporation located in the Province of Belluno, Italy which designs and manufactures eyeglass frames which are distributed worldwide. Defendant Lozza (USA) was a California partnership which was formed in 1986 and as of January 1989 was owned fifty-percent by the defendant Lozza SpA. During the period of May 31, 1986, when Lozza (USA) was formed, until April of 1991, when Lozza (USA) was dissolved as a partnership, Lozza (USA) operated under an exclusive distribution agreement whereby it was the sole and exclusive distributor for the sale of Lozza SpA eyewear products within the United States and the Caribbean.

As a result of the April 1991 dissolution of Lozza (USA), Lozza SpA has not shipped any products to the United States from that time until the present.

Plaintiff's claims in this action arise from an agreement between the plaintiff, the defendants and others dated March 31, 1987, which agreement settled prior litigation between these parties and others and purported to define the usage of various trademarks, tradenames and the use of promotional materials by the parties. Plaintiff's Second Amended Complaint sets forth four causes of action, which allege:

1. That the defendant Lozza (USA) breached the March 31, 1987 agreement by offering eyeglass frames for sale in the United States which were not marked in accordance with the agreement.

2. That the plaintiff owns the trademark "LINEA BY LOZZA" which the defendants have infringed by selling optical frames under the mark "Lozza".

3. Defendants have engaged in unfair competition and infringement of the plaintiff's common law rights in: (a) "LINEA BY LOZZA"; (b) Fratelli Lozza; (c) "ITALIAN DESIGN"; and (d) "FAMILY TRADITION IN FRAME MAKING" by using the name "Lozza" standing alone and "LOZZA OCCHIALI" (literally "Lozza spectacles") in promotional brochures and in a letter dated June 23, 1989 which plaintiff claims was distributed "to the trade" which disparages plaintiff and violates

---

* Judge Parker is Chief Judge of the District of Vermont sitting by designation in the Southern District of New York.

the March 31, 1987 settlement agreement.

4. A requested review by this court of April 16, 1990 and July 11, 1990 decisions of the Trademark Trial and Appeal Board which canceled plaintiff's United States trademark registration of the mark "LINEA BY LOZZA".

By way of relief plaintiff seeks a rescission of the March 31, 1987 agreement and requests injunctive relief which would include orders (1) prohibiting defendants from using the term "Lozza" or other marks or names similar to plaintiff's name which would likely create confusion in the marketplace, (2) ordering defendants to deliver up and destroy materials bearing the "Lozza" mark, and (3) to distribute to customers a publication acknowledging past misuses of the "Lozza" name as well as distribution of a retraction of the June 23, 1989 letter. Plaintiff also seeks reversal of the Trademark Trial and Appeal Board decision, costs and attorneys fees.

In the course of trial plaintiff withdrew the second and fourth causes of action, acknowledging it had no claim to the mark "LINEA BY LOZZA". Accordingly plaintiff's second cause of action alleging infringement of the "LINEA BY LOZZA" mark is dismissed and plaintiff's fourth cause of action requesting review of the April 16, 1990 and July 11, 1990 decisions of the Trademark Trial and Appeal Board in *Lozza USA v. Fratelli Lozza (USA), Inc.,* Cancellation No. 18,188 is dismissed.

Both defendants respond by denying various allegations set forth in the Complaint and by identical counterclaims which allege that the plaintiff breached the March 31, 1987 agreement (Exhibit 9) by continuing to use the mark "LINEA BY LOZZA" after January 31, 1991 and by failing to amend its use of "LINEA BY LOZZA" by including the expression "Fratelli Lozza". Defendants also urge this court to impose sanctions against plaintiff pursuant to Fed. R.Civ.P. 11.

Plaintiff and defendants stipulated to the following findings of fact in a joint pre-trial order, which facts are adopted as findings of this court, as follows.

## AGREED FINDINGS OF FACT

1. Plaintiff, Fratelli Lozza (USA) Inc., is a New York corporation incorporated February 9, 1978 under the name Fratelli Lozza SpA, Inc. One of its officers and shareholders was Mario Lozza. Fratelli Lozza SpA, Inc. changed its name to Fratelli Lozza (USA) Inc. (hereinafter "Fratelli Lozza") on June 29, 1987. Fratelli Lozza is located at Mt. Vernon, New York, and is in the business of importing and distributing high quality optical spectacle frames, principally of Italian manufacture. The President and major shareholder of Fratelli Lozza is Mario Lozza. Opti–Fashion Inc., a New York corporation, is the United States distributor for Fratelli Lozza, the latter owning a majority of the outstanding shares of Opti–Fashion. (Joint Trial Exhibit 37, Certificate of Incorporation of Fratelli Lozza).

2. Defendant Lozza SpA is an Italian corporation located in the Province of Belluno. It is a leading designer and manufacturer of high quality, innovative eyeglass frames which are distributed worldwide. It was founded in the 1870's by Giovanni Lozza, the grandfather of Mario Lozza. Before 1984, the Lozza family owned the majority of shares and controlled the day-to-day operations of Lozza SpA. At various times before 1984, Mario Lozza was a major shareholder and member of the Board of Directors of Lozza SpA, and held the position of President and/or Managing Director. At various times before 1984, Roberto Lozza, another shareholder and member of the Board of Directors, held the position of President and/or Managing Director in Lozza SpA. Roberto Lozza and Mario Lozza are cousins. (Joint Pre–Trial Exhibits 2, 5a, 5b, 6, 59, 60, 61, 62, 63, 64e, 71, 72, 78, 79, 80, 81, 82, 90).

3. At its inception on May 31, 1986, defendant Lozza USA was a California partnership formed among Lozza SpA, holding a 40% interest, Omtae Optics, Inc., a California corporation holding a 30% interest, and Maxwell Enterprises, Inc., a California corporation holding a 30% inter-

est. (Joint Trial Exhibit 58, Agreement of Partnership of Lozza USA).

4. Lozza SpA has used the "LOZZA" mark and the "L" design mark ( □ ) on eyeglass frames in the United States since the 1950's. Lozza SpA also manufactured eyeglass frames with the "LINEA BY LOZZA" trademark and exported them to Mya Originals for distribution in the United States. The following United States distributors also received and sold "LOZZA" product:

a. Trans World Eyewear, 14 Foster Street, Bergenfield, New Jersey (1950's to 1980's);

b. Starline Optical Corp., 2 Gardner Road, Fairfield, New Jersey 07006 (1980–1981);

c. Avant Garde, Berdel Division, 44 Harbor Park Drive, Port Washington, New York 11050 (1982–1986);

d. International Eyewear Trading Inc., Dobbs Ferry, New York 10522 (1970's to 1980's); and

e. Mya Originals, Inc., Dobbs Ferry, New York 10522 (1970's to 1980's).

(Joint Trial Exhibits 25, 43 and 44a).

5. Before 1984, Mario Lozza established several companies in the United States which distributed eyeglass frames manufactured by Lozza SpA. These included International Eyewear Trading Corp., I/O Optics Limited (USA), and Mya Originals, Inc. as well as Fratelli Lozza, the plaintiff in this action. (Joint Trial Exhibits 35, 36, 37 and 38).

6. International Eyewear Trading Corp. was a New York corporation established by Mario Lozza, who was a majority shareholder. (Joint Trial Exhibit 38, Certificate of Incorporation of International Eyewear Trading Corp.).

7. On March 3, 1976, a company named I/O Optics Limited (USA) was incorporated in New York by Mario Lozza, its major shareholder. The purpose of the business was to manufacture, import and distribute optical products, including eyeglass frames. (Joint Trial Exhibit 36, Certificate of Incorporation of I/O Optics).

8. On March 17, 1977, while Mario Lozza was President of Lozza SpA, Lozza SpA purchased 30% of the outstanding shares of I/O Optics for $30,000 pursuant to a Subscription Agreement. (Joint Trial Exhibit 20, Subscription Agreement).

9. On March 6, 1978, the Board of Directors of I/O Optics voted to amend the Certificate of Incorporation to issue 200 shares at $1,000 par value. (Joint Trial Exhibit 22, Certificate of Amendment of I/O Optics). That same day, the Board of Directors of Lozza SpA, including Mario Lozza as President and Roberto Lozza as Managing Director, voted to purchase all of the outstanding shares of I/O Optics for $70,000. These shares were owned by Mr. Desiderio DiSisto. (Joint Trial Exhibit 22, Memorandum of Minutes of Lozza SpA's Board meeting).

10. On March 20, 1978, Lozza SpA directed its bank, the Banco di Roma, to pay for the shares and to maintain the shares in the Banco di Roma office in New York on Lozza SpA's behalf. (Joint Trial Exhibit 23, Letter from Lozza SpA to Banco di Roma dated March 20, 1978).

11. On November 16, 1976, Mario Lozza established a New York corporation named Mya Originals, Inc. (Joint Trial Exhibit 35, Certificate of Incorporation of Mya Originals, Inc.). On or about July of 1977, Mya Originals obtained a loan for $100,000 from the State Street Bank and Trust Co. This loan was guaranteed by Lozza SpA. (Joint Trial Exhibit 21, July 7, 1977 letter from Banco S. Paolo Branch to State Street Bank, and July 3, 1978 Agreement between Mario Lozza and Dimitri J. Tripodi 25).

12. As of July 3, 1978, I/O Optics held 50% of the outstanding shares of Mya Originals, Inc. At that point, I/O Optics was wholly owned by Lozza SpA. Mario Lozza was an officer, director and major shareholder of Lozza SpA during this time period. The remaining 50% of the shares of Mya Originals, Inc. were owned by Dimitri J. Tripodi, who was the administrator of the business of Mya Originals, Inc. (Joint Trial Exhibit 25).

13. On July 3, 1978, Mario Lozza and Dimitri J. Tripodi entered into an agree-

ment whereby Mr. Tripodi would attempt to satisfy existing debts of Mya Originals, Inc. Mr. Tripodi would immediately resign any office held in I/O Optics and discontinue consulting for I/O Optics. Mario Lozza would resign any office held in Mya and would drop consulting on behalf of Mya. Furthermore, Lozza SpA would utilize Mya's facilities for representing and distributing "LOZZA" frames under an exclusive distribution agreement. Lozza SpA also agreed to grant Mya Originals a license to use the name "MYA". Upon execution of the contract, I/O Optics would transfer all of its Mya Originals shares to Mr. Tripodi.

14. On October 19, 1978, an acquisition agreement was entered into between Mario Lozza, Dimitri J. Tripodi, Lozza SpA, I/O Optics and Mya Originals, Inc. A Distribution Agreement and a License and Know–How Agreement were also entered into between Lozza SpA and Mya Originals, Inc. A Sales Agency Agreement was entered into on that same date between Lozza SpA and Dimic Associates, Inc. These agreements substantially incorporated the representations made in the earlier July 3, 1978 agreement between Mario Lozza and Mr. Tripodi.

15. On December 19, 1978, Mya Originals, Inc. officially changed its name to Tripodi Eyewear International, Inc. (Joint Trial Exhibit 27).

16. On August 29, 1979, the Distribution Agreement, License and Know–How Agreement and Sales Agency Agreement were mutually terminated by the signatories to those agreements. (Joint Trial Exhibit 27, August 29, 1979 Termination Agreement).

17. On March 9, 1978, an application to register the trademark "LINEA BY LOZZA" was filed in the United States Patent and Trademark Office in the name of Mya Originals, Inc. of Dobbs Ferry, New York. The date of first use was stated to be January 9, 1978. (Joint Trial Exhibit 88a).

18. On January 6, 1979, the pending application for "LINEA BY LOZZA" was assigned by Mya Originals to I/O Optics. I/O Optics was wholly owned by Lozza SpA. (Joint Trials Exhibits 22, 23, 28–30, 34 and 88c).

19. The Patent and Trademark Office approved the application for "LINEA BY LOZZA" on June 12, 1979 and it was registered under No. 1,119,957. The registered owner, by assignment, was I/O Optics, wholly owned by Lozza SpA. (Joint Trial Exhibits 22, 23, 28–30, 34 and 88e).

20. On January 8, 1982, International Eyewear Trading Corp., one of Mario Lozza's United States companies, offered to purchase all of the outstanding shares of I/O Optics from Lozza SpA. The proposed purchase price was $100,000. (Joint Trial Exhibit 28, letter from Bruce E. Trauner, Esq. dated January 25, 1982).

21. Roberto Lozza responded that the Board of Directors was interested in assigning all of the shares of I/O Optics to International Eyewear Trading Corp. (Joint Trial Exhibit 29, letter from Roberto Lozza to Mr. Trauner dated January 25, 1982).

22. Although an agreement was effectuated, the shares were never transferred to International Eyewear Trading Corp. because of a dispute between Mario Lozza and Lozza SpA. The shares remain in Lozza SpA's account at Banco di Roma in New York. Lozza SpA has continuously paid for the upkeep of these shares. (Joint Trial Exhibit 34).

23. On January 8, 1984, an agreement was reached between Walter DeRigo, an Italian citizen, and Industria Cadorina Occhialeria Fratelli Lozza, SpA (sometimes referred to as I.C.O.L. SpA), the predecessor of what is now known as Lozza SpA. Pursuant to this agreement, Mr. DeRigo acquired 33.33% of the shares of Lozza SpA and was appointed Managing Director. Mario Lozza retained shares in the corporation and his seat on the Board of Directors; he was named Non–Operating President. Roberto Lozza also retained shares in Lozza SpA and remained a director. (Joint Trial Exhibit 2, January 23, 1984 Agreement between Walter DeRigo and Lozza SpA).

24. In November of 1984, several months after Walter DeRigo acquired stock in Lozza SpA and became Managing Director, the United States Patent and Trademark Office accepted a declaration of continuing use of the trademark "LINEA BY LOZZA" filed by I/O Optics. (Joint Trial Exhibit 88f). The registration was officially maintained on April 9, 1985. (Joint Trial Exhibit 88g). Over a year later, on June 19, 1986, I/O Optics executed an assignment of the registration to Fratelli Lozza, the plaintiff in this action. (Joint Trial Exhibit 88h). At all times during these transactions, Mario Lozza was a member of the Board of Directors and shareholder of Lozza SpA. (Joint Trial Exhibit 34).

25. On February 20, 1986, Walter DeRigo, President of Lozza SpA, signed a Letter of Intent directed to Mr. Gary Benson and Mr. Brian Jablon and pertaining to the formation of a joint venture tentatively entitled "Lozza International Inc., USA" as an optical distributor exclusively for Lozza SpA, Italy. (Joint Trial Exhibit 52). The Letter of Intent sets forth the distribution of shares as follows: Lozza SpA would own 40% of the shares of the United States distributor, Gary Benson would own 30% of the shares and Brian Jablon would own 30% of the shares. Lozza SpA's obligations would be as follows:

a. Lozza SpA would supply the initial inventory for the joint venture in the amount of $800,000 to $1,000,000 at manufacturer's cost;

b. Lozza SpA would discontinue all present American distributors as the agreements with those distributors expired; and

c. Lozza SpA would introduce an initial line of 15 to 85 styles and introduce 10 to 12 new styles per quarter.

26. On May 31, 1986, a document entitled "Agreement of Partnership of Lozza, USA" was entered into by and between Lozza SpA, Omtae Optics, Inc., a California corporation, and Maxwell Enterprises, Inc., a California corporation. (Joint Trial Exhibit 58). Lozza SpA held 40% of the outstanding shares; Omtae Optics, Inc. held 30% of the shares; and Maxwell Enterprises, Inc. held 30% of the shares.

27. Brian Jablon was the President of Maxwell Enterprises, Inc.; Gary Benson was the President of Omtae Optics, Inc. (Joint Trial Exhibit 58).

28. Pursuant to Article III of the "Agreement of Partnership of Lozza, USA", Omtae Optics, Inc. and Maxwell Enterprises, Inc. acted as the "managing partners" of the partnership. Lozza SpA acted as the "non-managing partner" and was not required and had no right to manage the day-to-day operations or conduct of the partnership's business. (Joint Trial Exhibit 58).

29. Lozza SpA and Lozza, USA also entered into an "Exclusive Distribution Agreement" whereby Lozza SpA appointed Lozza USA as the sole and exclusive distributor for the sale of the eyewear products within the United States and the Caribbean (Joint Trial Exhibit 59).

30. On November 29, 1986, Mr. DeRigo, at that time President of Lozza SpA, and Mr. Mario Lozza, in his own name, and Marisa Fedon (his wife) and Lia Lozza (a sister of Mario Lozza) entered into an Agreement whereby Mr. DeRigo purchased additional shares of Lozza SpA which were owned by the three Lozza siblings. After this transaction, Mario Lozza and his sisters no longer owned any shares of Lozza SpA. Mr. DeRigo purchased these shares (which constituted 33.33% of Lozza SpA's outstanding shares) on behalf of companies known as Surfrigo Nord and Surfrigo Sud, of which he was the sole administrator. As a result of this agreement, Mr. DeRigo controlled 66.66% of the shares of Lozza SpA. (Joint Trial Exhibit 5a, November 29, 1986 Agreement between Walter DeRigo and Mario Lozza).

31. In March, 1987,[1] an English translation of the November 29, 1986 Agreement

---

1. The parties, when preparing the Joint Pre-Trial Order, did not realize that Exhibit 5b contained a typographical error on the first page which referenced to the wrong date of November 29, 1987. The last page of Exhibit 5b makes

was prepared. It has the same force and effect as the original Agreement dated one year earlier. (Joint Trial Exhibit 5b, November 29, 1987 Agreement between Walter DeRigo and Mario Lozza, Marisa Fedon and Lia Lozza)

32. The November 29, 1986 agreement (Joint Trial Exhibit 5b) contained the following statement:

The surveyor DeRigo, as President of I.C.O.L. SpA and as a partner and the person most interested in Lozza U.S.A., with headquarters in Los Angeles, on behalf of I.C.O.L., is aware of the existence of a company called Fratelli Lozza U.S.A. Inc. with headquarters in Mount Vernon, and declares that he has nothing to oppose to the latter company keeping this name and issuing on the market glasses marked "By Lozza". In turn, the accountant, Mario Lozza, committing himself, his children and wife, and any other third person operating or who will operate in the U.S.A. market, is aware of the existence of a "Lozza U.S.A." company, with headquarters in Los Angeles, in which I.C.O.L. is most interested, and which will put glasses on the market marked "Lozza U.S.A." or similarly as long as they are not marked "By Lozza". Both the contracting parties promise to study suitable solutions for avoiding objective confusion and disloyal competitive facts, in the spirit of good faith.

33. On February 7, 1987, Mr. DeRigo, as President of Lozza SpA, and Mr. Mario Lozza, in his own name and as President of Fratelli Lozza (U.S.A.) Inc., entered into an Agreement to clarify and modify the November 29, 1986 Agreement. (Joint Trial Exhibit 6, February 7, 1987 Agreement between Lozza SpA and Fratelli Lozza).

34. The February 7, 1987 agreement (Joint Trial Exhibit 6) placed the following obligations on Mario Lozza:

a. The trademark "LINEA BY LOZZA" could only be used by Fratelli Lozza on the existing collection of twenty eyeglass frames already introduced into the United States of America. Mario Lozza's use of the trademark "LINEA

BY LOZZA" would not continue past January 31, 1988;

b. Mario Lozza would abandon the pending United States trademark application for the trademark "LOZZA", filed on January 27, 1986, and would not oppose any application by Lozza USA for the "LOZZA" trademark; and

c. Mario Lozza agreed to modify the trademark "LINEA BY LOZZA" to either "LINEA BY FRATELLI LOZZA", "FRATELLI LOZZA", "BY FRATELLI LOZZA" or "LOZZA" preceded by a Christian name or an invented name.

35. On February 12, 1987, Lozza SpA transferred and assigned to Lozza USA all of Lozza SpA's rights and causes of action against Mr. Mario Lozza in any related entities concerning Mario Lozza's utilization of any name confusingly similar to "LOZZA", "FRATELLI LOZZA", "FRATELLI LOZZA, USA", "Lozza USA", "LINEA BY LOZZA", "FRATELLI LOZZA SpA", the "L and LOZZA Logo", and Mario Lozza's claimed ownership of the corporation known as "I/O Optics" of Mya Originals. Lozza SpA agreed that Lozza USA may if necessary file suit in the name and on behalf of Lozza, SpA to enforce the rights and claims of action hereinbefore stated. (Joint Trial Exhibit 61).

36. On February 27, 1987, Lozza USA initiated a lawsuit in the United States District Court for the Central District of California against Mario Lozza, Virgilio Lozza, Fratelli Lozza (USA) Inc., Mya Originals, Inc., Opti–Fashions, Inc., I/O Optics Limited (USA), Martin Niskar, and Regal Optical for a declaratory judgment as to trade name and trademark rights, interference with contract, imposition of a constructive trust, and preliminary and permanent injunctive relief. Lozza SpA was named as a party plaintiff. (Joint Trial Exhibit 7).

37. The parties stipulated to dismiss the foregoing declaratory judgment action with prejudice, based upon a March 30, 1987 settlement agreement between the parties and a March 31, 1987 memorandum of

it clear that the date on the first page should have been November 29, 1986.

agreement between the parties. (Joint Trial Exhibits 8 and 9, respectively).

38. Paragraph 4 of the March 31, 1987 memorandum of agreement (Joint Trial Exhibit 9) places the following obligations on Lozza USA:

LOZZA USA, a partnership, shall continue to use its present name for trade name purposes. It further agrees that in conjunction with its use of the expression LOZZA USA on eyeglass frames, it will set forth in its packaging, and any advertisements already placed or to be placed that it is the exclusive distributor of goods manufactured by the Italian company SpA Lozza di Calalzo di Cadore, and will distribute no goods that do not contain this designation.

39. Paragraph 4 of the March 31, 1987 memorandum of agreement (Joint Trial Exhibit 9) places the following obligations on Fratelli Lozza (USA) Inc.:

Fratelli Lozza (USA), Inc., a New York corporation, shall continue to use its corporate name in its present form but will adopt and use the trade name "Fratelli Lozza" for all eyewear business purposes. With respect to letterheads and similar printed material, such materials may indicate that Mario Lozza is the President of said corporation, and that other members of Mario Lozza's family are officers thereof. There shall also appear one or more of the following designations or expressions of similar import: "Tradition in frame making," or "Italian design in eyewear."

40. Fratelli Lozza is also subject to the following provision of paragraph 4 of the March 31, 1987 memorandum of agreement.

Pursuant to an earlier agreement between Walter DeRigo and Mario Lozza, Fratelli Lozza (USA) Inc. may also use the trademark LINEA BY LOZZA on up to twenty frame styles until January 31, 1988. After that date, Fratelli Lozza (USA) Inc. will use the trademark FRATELLI LOZZA and/or the name Lozza proceeded by another term such as a baptismal, actual or fanciful name.

41. The provisions of paragraph 4 of the March 31, 1987 memorandum of agreement govern throughout the world. (Joint Trial Exhibit 9).

42. Despite the obligations set forth in the preceding paragraph, plaintiff Fratelli Lozza has used the mark "LINEA BY LOZZA" on eyeglass frames in the United States past January 31, 1988. (Deposition Transcript of Mario Lozza, pages 90–92, Joint Trial Exhibit 101a).

43. On May 28, 1987, a document was distributed by Fratelli Lozza and Lozza USA concerning the origins of each company. The aim of this document was to eliminate any and all confusion that may have occurred in the marketplace as a result of the names and manufacturing positions of the two companies, Fratelli Lozza and Lozza USA. (Joint Trial Exhibit 11, May 28, 1987 Joint Press Release).

44. On April 11, 1988, the Trademark Trial and Appeal Board decided the case of *Lozza USA v. Fratelli Lozza (USA), Inc.,* Opposition No. 76,361. The Trademark Trial and Appeal Board entered summary judgment for Lozza USA and sustained its opposition to the registration of LOZZA for eyeglass frames by Fratelli Lozza (USA), Inc. on the grounds that in the February 7, 1987 agreement between the parties Fratelli Lozza agreed to abandon its application to register the "LOZZA" trademark. (Joint Trial Exhibit 89).

45. On April 16, 1990, the Trademark Trial and Appeal Board decided the case of *Lozza USA v. Fratelli Lozza (USA), Inc.,* Cancellation No. 18,188. The Trademark Trial and Appeal Board canceled United States Trademark Registration No. 1,119,-957 for LINEA BY LOZZA, owned by Fratelli Lozza (USA) Inc. on the grounds that Fratelli Lozza had abandoned the registered mark by amending the mark to LINEA BY FRATELLI LOZZA pursuant to the March 31, 1987 memorandum of Agreement (Joint Trial Exhibit 9) between the parties. (Joint Trial Exhibit 90, TTAB decision).

46. Fratelli Lozza applied on October 11, 1990 to the United States Patent and Trademark office to register the trademark

"EMOTIONS BY FRATELLI LOZZA" for eyeglass frames, first use date August 1, 1990. This application was assigned Serial No. 104,888 and is pending. (Joint Trial Exhibit 93).

47. Lozza USA applied on February 27, 1987 to register the trademark "LOZZA" for eyeglass frames, with a first use date of January 1978. This application was assigned Serial No. 646,886. It was published by the Patent and Trademark Office on March 5, 1991; Fratelli Lozza filed an opposition against the application, which is stayed, pending the outcome of this lawsuit. (Joint Trial Exhibits 91 and 92).

48. Lozza USA applied on February 27, 1987 to register the trademark "LOZZA USA" for eyeglass frames, with a first use date of February 27, 1987. This application was assigned Serial No. 646,887 and was published for opposition on October 22, 1991. (Joint Trial Exhibits 91 and 92).

49. In January of 1989, Gary Benson and Omtae Optics, Inc. withdrew from the partnership of Lozza USA. Brian Jablon became the President of Lozza USA. The distribution of shares in the partnership was as follows: Lozza SpA and Maxwell Enterprises, Inc. each held 50% of the shares of Lozza USA. Maxwell Enterprises retained its position as Managing Partner. (Joint Trial Exhibit 64e).

50. Lozza USA was dissolved as a partnership in April of 1991. Lozza SpA has not shipped any product to the United States in 1991 as a result of the dissolution of Lozza USA although it intends to resume such shipments in the future.[2]

51. The original Complaint in this action was filed and served on June 20, 1990. Only Lozza USA was named as a defendant. (Joint Trial Exhibit 94).

52. Lozza SpA was later joined as a defendant when a Second Amended Complaint was filed on February 8, 1991.

Counsel for the parties attempted to resolve this matter and executed several Stipulations extending Lozza SpA's time to answer the Second Amended Complaint. The action was not settled. Lozza SpA served and filed an Answer to the Second Amended Complaint on June 17, 1991. (Joint Trial Exhibits 96 and 98).

53. As of August of 1991, Roberto Lozza had sold his remaining shares in Lozza SpA to Walter DeRigo. Mr. DeRigo, or companies controlled by him, owned all of the outstanding shares of Lozza SpA.[3]

### ADDITIONAL FINDINGS OF FACT

On the basis of evidence presented to the court by way of testimony taken on March 16, 1992 and information contained in the Joint Exhibits of the parties numbered consecutively 1 through 113, contained in volumes numbered I through VIII, which are made a part of the record in this case, the court finds as follows:

54. After execution of the March 31, 1987 agreement (Exhibit 9) and until the end of 1988 the defendant Lozza SpA shipped eyeglass frames to Lozza (USA) which were properly marked in accordance with the March 31, 1987 agreement.

55. Commencing at the end of 1988, however, and continuing through 1989 and into 1990, Lozza SpA shipped eyeglass frames to Lozza (USA) which were imprinted with the words "Lozza Frame Italy" on the temple tip and "Lozza" on the sample glass/plastic of the lens. These markings were inconsistent with the March 31, 1987 agreement which required Lozza (USA) to use the name "Lozza (USA)" on eyeglass frames and on packaging and advertisements as well as setting forth in the packaging and advertisements that it ("Lozza (USA)") is the exclusive distributor of goods manufactured by the Italian company Lozza SpA.

---

2. Although the parties stipulated to this paragraph in the Joint Pre-Trial Order, they submitted an amended version of the original stipulation two days after the close of evidence which indicates that the earlier version was inaccurate. The parties now agree that Lozza USA suspended business in April of 1991 but the partnership has not been legally dissolved. The court adopts this later version. (Joint Trial Exhibit 103, Del Fabbro Depo. at 140).

3. Although the parties agreed to this finding, no exhibit was filed with the court and the parties apparently agree that one is unavailable.

56. The actual quantities of frames shipped from Lozza SpA to Lozza (USA) during the period from 1986 through 1990 including the labeling of the frames year by year is set forth in Exhibit 67. Exhibit 67 shows for each year from 1986 through 1990 the number of frames shipped, those which were marked "Lozza (USA)" and those which were marked only "Lozza" during 1988, 1989 and 1990, the latter category being those which were labeled inconsistent with the requirements of the March 31, 1987 agreement. The court specifically finds that Exhibit 67 is an accurate reproduction of the facts which occurred. It indicates that during the years 1988 through 1990, 130,543 frames were shipped; of those 24,722 were improperly labeled since they bore only the name "Lozza" as opposed to "Lozza (USA)". This represents nearly 19% of the frames shipped during the 1988, 1989 and 1990 time period.

57. If one were to look at the time period from 1986 through December of 1990 Lozza SpA shipped a total of 321,508 frames, 24,722 of which were mislabeled. This is 7.6% of the frames sold by Lozza SpA during that period of time.

58. During the period from May 1989 to June 1990 however, 17,570 frames marked only "Lozza Frame Italy" on the temple were shipped but were accompanied by cases or packaging cards which bore stickers with the "Lozza (USA)" name and its identification as the distributor of Lozza SpA as required by the March 1987 agreement. Thus, of the 24,722 frames which were improperly marked, only 7,572 (2.3%) of the total did not have a "Lozza (USA)" sticker or marking on the frame, case or packaging card. (Del Fabbro Deposition Exhibit No. 103 pages 44–60).

59. From June 1990 to the end of the Lozza (USA) importations in 1991, the European frame shipped from Lozza SpA to Lozza (USA) were double-printed with "Lozza Handmade in Italy Lozza (USA)" on the temples and with stickers bearing "Lozza (USA)" on the cases and packing cards.

60. It appears that the mislabeling problem arose by virtue of the fact that at the end of 1988 a European look was becoming popular in the United States and Lozza SpA and Lozza (USA) decided to experiment in the United States with European styles which Lozza SpA sold worldwide. The European style frames bore the markings "Lozza" and not the marking "Lozza (USA)" which latter marking was only required in the United States. The shipping of the mislabeled product by Lozza SpA was inadvertent and once the problem was brought to Lozza SpA's attention it began correcting the problem by using Lozza (USA) stickers and the double printing which occurred from June 1990 to April 1991. Lozza SpA took steps to correct the labeling problem in May of 1989, six months after it commenced, by using stickers with the "Lozza (USA)" name on the cases or packaging cards accompanying the glasses frames.

61. The plaintiff Fratelli Lozza began to concentrate on the Southern California market for its products in 1989 when it retained the services of Susan Elliott to act as its Regional Sales Manager.

62. Ms. Elliot notes several specific instances of dealing with individual customers who expressed resistance to purchasing products from the plaintiff, Fratelli Lozza, as a result of prior bad experiences that they had had with the defendant Lozza (USA). Most of the difficulty arose from the fact that Lozza (USA) left the market in 1991 and the customers could not receive credit for product that they wanted to return or replacement frames or parts. Ms. Elliot testified about nine customers who fell in this category. (See Pre–Trial Exhibit 102 (Exhibit A.))

63. There is a buying group in California known as Primary Eye Care Network which has five- to six-hundred members, all of whom are optometrists who would be part of the natural customer group for the plaintiff, Fratelli Lozza. In order for Fratelli Lozza to be able to sell to the Primary Eye Care Network members however, it is necessary to obtain the approval of the membership in a vote and also the approval

of one Doctor Osias who is the Chief Executive Officer of Primary Eye Care Network and apparently has the authority to decide with whom the various members may deal in their purchases of eyewear products.

64. The membership of the Primary Eye Care Network has voted to include the plaintiff Fratelli Lozza as an approved source of product. However, Dr. Osias has thus far indicated that he would not permit that to occur until such time as Fratelli Lozza (USA) has proved itself as a stable element in the market. Although Doctor Osias has indicated to Ms. Elliott (Fratelli Lozza's Sales Manager) that he found it "suspicious" that Fratelli Lozza was operating under the same or similar name as Lozza (USA) and that he was aware that various of the optometrists in Primary Eye Care Network had been "burned" by Lozza (USA), it is unclear whether Dr. Osias would decline to approve Fratelli Lozza as a source of supply for the membership of Primary Eye Care Network until Fratelli Lozza had been in the market for several years—regardless of whether the Lozza (USA) confusion existed.

65. Fratelli Lozza sales in Southern California have increased from ten accounts in 1989 to some 594 accounts at present, with growth having occurred both during the period when Lozza (USA) was in the market and subsequent to Lozza (USA's) departure from the market.

66. Southern California is an extremely competitive sales area which already is oversaturated with various eyewear products.

67. There has clearly been some confusion in the marketplace over the use of Fratelli Lozza and Lozza (USA) in the same market. That confusion is an inevitable result of the fact that Fratelli Lozza, Lozza SpA and Lozza (USA) agreed in the March 31, 1987 memorandum of agreement that Fratelli Lozza and Lozza (USA) could continue to operate in the United States markets under various versions of names which would include the name "Lozza".

68. The March 31, 1987 agreement provides that the plaintiff Fratelli Lozza will adopt and use the tradename "Fratelli Lozza" and that promotional materials shall use the designations "Tradition in frame making" or "Italian design in eyewear" or "expressions of similar import." An approved joint press release used in connection with the settlement included a designation "Fratelli Lozza" as "Italian Design and Family Tradition in Frame Making" and further included a statement that "The Lozza family, founders and former owners of Lozza SpA Italy, established Fratelli Lozza to continue the family tradition in frame making which originated in 1878 when Giovanni Lozza founded the very first eyewear laboratory in Italy."

69. Subsequent to the March 31, 1987 agreement the plaintiff Fratelli Lozza (USA) Inc., has used the phrase "Since 1878" following the name "Fratelli Lozza" extensively in its advertising brochures and packaging materials distributed in connection with the eyeglass frames which plaintiff distributes.

70. Since Fratelli Lozza actually only came into existence in 1978 as Fratelli Lozza Spa, or Inc., with a name change to Fratelli Lozza in 1987, the statement "Fratelli Lozza since 1878" is simply untrue and is not a statement which was authorized by the March 31, 1987 agreement.

71. On the other hand, the defendant Lozza SpA was in fact started in 1878 (Del Fabbro Deposition Page 126).

72. Lozza SpA intends to reenter the U.S. market and use the trademark "Lozza (USA)". (Del Fabbro Deposition Page 145)

73. Given the fact that the customers of the plaintiff Fratelli Lozza and the defendant Lozza (USA) were opticians or optometrists, the confusion in the market place is very much reduced because those purchasers are aware of the difference between Fratelli Lozza and the Lozza (USA) products which are manufactured by Lozza SpA in Italy.

74. All of the optical frames which was shipped with incorrect markings were invoiced as a Lozza (USA) product. (Del Fabbro Deposition Page 153).

75. Exhibit 80 is brochure made by Lozza (USA) which was given to various cus-

tomers of Lozza (USA) from mid–1989 and thereafter. The brochure is marked with the name "Lozza (USA)" and recites some the history of Lozza (USA) and its connection with Lozza SpA. There is nothing which appears in exhibit 80 which violates the terms of the March 31, 1987 agreement or which in any way infringes any trademark of Fratelli Lozza (USA).

76. Plaintiff's claim (in its complaint) that it has a trademark in the words "Italian Design" or "Family Tradition in Frame Making" is unsupported by any evidence in the case and this court finds that Fratelli Lozza in fact has no trademark in those expressions.

77. Plaintiff does have a contractual right to use the terms "Italian Design" and "Family Tradition in Frame Making" as part of the March 31, 1987 contract.

78. Exhibit 81 is a promotional catalog printed and distributed by Lozza (USA). It was produced in mid–1989. Exhibit 81, which uses the mark Lozza (USA) on the back page along with the inscription "Lozza (USA) is the sole exclusive distributor of Lozza SpA, Italy". On the front page there is a statement "The Visionary Company Lozza (USA)". While there is reference inside the catalog to Lozza, Italy and the use of the word "Lozza" alone, those words are used in a context which makes it clear that the reference to Lozza Italy is a reference to the Lozza (USA) parent company Lozza SpA.

79. While use of the terms "Lozza" or "Lozza Italy" in the Lozza (USA) brochures should have been avoided and should be avoided in the future, given the nature of the March 31, 1987 agreement, the context of their use in Exhibit 81 is at most a *de minimis* violation of the March 31, 1987 memorandum of agreement. Nor does it constitute an infringement of any Fratelli Lozza mark or a disparagement of any Fratelli Lozza product, trademark, or business interest.

80. Exhibit 82, a June 23, 1989 letter was prepared and sent to various customers of Lozza (USA) in response to a rumor in the industry that the Fratelli Lozza sales representatives were saying that they (Fratelli Lozza) were the real Lozza and Lozza (USA) was the fake one and that Lozza (USA) was not related to the factory.

81. Exhibit 82 was sent in conjunction with a photocopy of the May 28, 1987 joint press release which was prepared in conjunction with the March 31, 1987 agreement and which is Exhibit 11 in this case.

## DISCUSSION AND CONCLUSIONS OF LAW

■ Plaintiff's first cause of action alleges that the defendant Lozza (USA) "almost immediately breached" the March 31, 1987 agreement (Exhibit 9) by offering for sale and selling eyeglass frames which were not marked in accordance with the agreement, specifically the sale of eyeglass frames marked solely "Lozza" without the accompanying term "USA". In fact there is no evidence any such sales occurred until late 1988 or early 1989. As of January 1988, on the other hand, the plaintiff was obligated to cease use of the name "Linea by Lozza" as a part of its obligations under the March 31, 1987 agreement. This the plaintiff failed to do.

Thus, it was the plaintiff that went into breach of the agreement in the first instance and the plaintiff that has continuously breached the agreement from January 31, 1988 until 1990, by its use of the trademark "Linea by Lozza" which trademark it had agreed to abandon as of January 31, 1988 and which trademark it was judged to have abandoned by the April 16, 1990 decision of the Trademark Trial and Appeals Board. (See Finding No. 45)

■ Furthermore, subsequent to the March 31, 1987 agreement plaintiff Fratelli Lozza has been using the product markings "Fratelli Lozza since 1878". The March 31, 1987 agreement permits Fratelli Lozza to use the name "Fratelli Lozza" in connection with the designation "Tradition in Frame Making" or "Italian Design in Eyewear". The agreement does not authorize the use of the phrase "Since 1878". In fact that is an inaccurate representation since Fratelli Lozza of course never existed prior to 1986 despite the fact that its ownership

and management has been very much involved for many years with the tradition in frame making and the use of Italian design in eyewear given the background of Mario Lozza in the Lozza family.[4]

The two breaches by the plaintiff Fratelli Lozza undermine its ability to obtain equitable relief in this court, given the equitable premise that one who seeks equity may not invoke such relief if it has unclean hands. *Broadcast Music, Inc., v. Hearst/ABC Viacom Entertainment Servs.*, 746 F.Supp. 320, 329 (S.D.N.Y. 1990); *Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F.Supp. 96, 135 (S.D.N.Y.1989).

In any event this court has found that any breach of the March 31, 1987 agreement by defendant Lozza (USA) was minimal in its impact both in view of the fact that only a limited number of frames were mislabeled and the fact that there is no substantial evidence that marketplace confusion was caused by the mismarking as opposed to being caused by virtue of the fact that two businesses with very similar names and products were operating in the same market. In other words, Lozza (USA)'s breach was not sufficiently substantial to defeat the purpose of the entire transaction such that the March 31, 1987 agreement ought to be rescinded. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir.1976).

In fact, in order for plaintiff to be entitled to the equitable relief of recision and the injunctive relief of effectively foreclosing defendants from any reentry into the marketplace, it would have to show that Lozza (USA)'s breach was so "willful, or if not willful so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir.1989) (citing *Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910); *Canfield v. Reynolds*, 631 F.2d 169, 178 (2d Cir.1980)).

The plaintiff has failed to present this court with any evidence suggesting that the mislabeling of products which occurred briefly in 1989 was anything but an inadvertent mistake which was corrected once it was brought to the attention of the defendants, Lozza SpA and Lozza (USA).

With regard to the third cause of action plaintiff has also failed in its burden of proof. There is simply no credible evidence before the court tending to show that the defendant, Lozza (USA)'s promotional material constituted an infringement of any of plaintiff's marks. With regard to the "Fratelli Lozza" mark or Fratelli Lozza's right to use the terms "Italian Design" and "Family Tradition in Frame Making" in conjunction with the name "Fratelli Lozza", this court cannot conclude that any of the defendant's promotional material constituted an infringement. To the extent that the plaintiff claims that defendant's use of the name "Lozza" in the promotional materials distributed by the defendant Lozza (USA) constituted an infringement, this court simply cannot agree. The promotional materials made it clear that they were being distributed by Lozza (USA) and Lozza (USA) made its connection to Lozza SpA clear. The use of the term "Lozza" standing alone in that material was done in a context where it would be clear to any ordinary reader that the reference to Lozza was in connection with Lozza (USA) or Lozza SpA and certainly bore no connection to Fratelli Lozza or any of its products.

The claim that the distribution of the June 1989 letter constituted slander and disparagement of the plaintiff is undercut by the fact that the distribution was done in reaction to actions of Fratelli Lozza and the distribution was done concurrently with distribution of the jointly agreed upon press release (Exhibit 11) which release made it clear what was going on between the two companies. Judgment is rendered in favor of the defendant on the first and

---

**4.** In fact the joint press release contains the statement, "The LOZZA family, friends and former owners of LOZZA SpA Italy, established FRATELLI LOZZA to continue the family tradition in frame making which originated in 1878 when Giovanni Lozza founded the very first eyewear laboratory in Italy." This statement could certainly have been used by plaintiff.

second causes of action and the court declines to grant any relief to plaintiff.

THE DEFENDANTS' COUNTERCLAIMS

On the basis of the clear provisions of the March 31, 1987 agreement (Exhibit 9), the April 16, 1990 decision of the Trademark Trial and Appeals Board, and the withdrawal by plaintiff of its second and fourth causes of action, the defendants are entitled to relief on the counterclaim. This court hereby ORDERS that the plaintiff, Fratelli Lozza (USA) Inc., is prohibited from the use of the trademark "LINEA BY LOZZA".

The use by Fratelli Lozza of the terms "SINCE 1878" in the display of its name and on its promotional literature and all of its printed forms, stationery, catalogs and advertising is false and deceptive in view of the fact that Fratelli Lozza has only been in existence since 1986 or 1987. While the March 31, 1987 agreement gave Fratelli Lozza the right to use the terms "Italian Design", "Family Tradition in Frame Making" and other expressions of similar import, the agreement specifically did not authorize the use of the phrase "Since 1878." In view of the fact that Lozza SpA has been in the business of Italian framemaking since 1878, it seems clear to the court that the use of the term "Since 1878" has a tendency to deceive the purchasing public and to confuse it in ways that were not authorized by the agreement and are in violation of the Lanham Federal Trademark Act of 1946. Lozza SpA has succeeded on the merits of its counterclaim in demonstrating a tendency to deceive and there appears to be no adequate remedy at law. Accordingly, this court ORDERS Fratelli Lozza to cease using the term "SINCE 1878" on products, promotional materials or in advertisements.

Finally, defendants urge sanctions against plaintiff and plaintiff's counsel pursuant to Fed.R.Civ.P. 11. While plaintiff has failed to prevail in this litigation, the court accepts the representation of plaintiff's counsel that discovery uncovered documents which substantially undermined a claim (the Linea by Lozza claim) which plaintiff previously believed to be sound. The court does not have sufficient evidence before it to conclude that plaintiff or its counsel were objectively unreasonable in pursuing any claim at all, although the claims turned out to be thin, indeed. Defendant's request for the imposition of Rule 11 sanctions is DENIED.

CONCLUSION

In summation:

1.) Plaintiff's second and fourth causes of action are DISMISSED.

2.) Plaintiff's request for relief under the first and third causes of action are DENIED.

3.) Defendant's request for relief under its counterclaim is GRANTED. Plaintiff is permanently enjoined from using the term "Since 1878" on its products, promotional materials or advertisements.

4.) Defendants' request for the imposition of Rule 11 sanctions is DENIED.